The **UNITED STATES** of America

v.

Owen B. **HARVEY.**

Civ. A. No. 1841.

United States District Court
N. D. Texas, Amarillo Division.

Dec. 30, 1954.

Heard L. Floore, U. S. Atty., F. L. Hartman and W. B. West III, Asst. U. S. Attys., Fort Worth, Tex., for the United States.

Archer & Hazlewood, Amarillo, Tex., for defendant.

DOOLEY, District Judge.

The plaintiff United States of America sued the defendant Harvey, a landowner and resident of Wheeler County, Texas, to enforce a penalty for a "farm marketing excess" of cotton production in 1950, as prescribed under the terms of the Agricultural Adjustment Act of 1938.[1]

On or about August 5, 1949, the secretary for the County Committee of said county mailed to him a "Notice of Farm Acreage for Use In Determining Cotton Allotments", (hereafter called "Basic Acreage Notice"), dealing prospectively with the 1950 crop year, and the main body of said notice reads as follows:

"The county committee and your local committeeman have reviewed the crop land and crop acreages recently reported on Form PMA–532–C for the above described farm. The basic acreages approved by the committee, as of above date, for the purpose of establishing cotton acre-

1. Title 7, Section 1346, U.S.C.A.

age allotments for the farm are shown below. Except for adjustments made by the committee on the basis of information which it may receive later, the acreages shown above will be used, unless the 1949 farm owner or operator notifies the committee within 15 days from the date shown above that the acreages are not correct and within such 15 day period files evidence to substantiate his claim, or makes arrangements with the committee to appear before it to establish the correct acreages."

The schedule part thereof showed a history of 28 acres of cotton in each of the years 1945, 1946, 1947 and 1948.

No notice of the defendant's cotton acreage allotment for the year 1950 was ever sent to him, as required by the statute,[2] and pertinent regulations promulgated by the Secretary of Agriculture.[3] He grew a crop of cotton on some 7 or 8 acres of his farm that year.

The acreage data shown in the aforesaid "Basic Acreage Notice" received by the defendant would have supported an acreage allotment well over the small cotton acreage in question planted by the defendant, and with such allotment probably there would have been no farm marketing excess in the crop. The defendant sold all of the cotton grown and harvested on his said tract in 1950 without knowing there had been any hitch about his acreage allotment. The defendant strongly disliked the farm program under the Agricultural Adjustment Act and disdained willing cooperation with the administration of the law. He did not file the report form PMA–532–C, recited in the body of the "Basic Acreage Notice", hereinbefore mentioned, and he made no enquiry later to ascertain for himself what had been done after failing to receive any notice of an acreage allotment. In fact, as a result of his dissident attitude, he may not have known he should expect such a notice.

On or about March 13, 1951, several months after defendant had harvested and sold his said crop of cotton, the Production and Marketing Administration Committee of Wheeler County, Texas, served on him "Notice of Farm Marketing Quota, Farm Marketing Excess and

---

**2.** Title 7, Section 1362, U.S.C.A.:

"Notice of the farm acreage allotment established for each farm shown by the records of the county committee to be entitled to such allotment shall insofar as practicable be mailed to the farm operator in sufficient time to be received prior to the date of the referendum."

Interrelated Section 1343 provides that the referendum shall not be later than December 15.

**3.** "Marketing Quota Review Regulations, Section 711.5—Notice of Acreage Allotments and Quotas. (a) Immediately upon the establishment of quotas for any commodity, the county committee shall mail a written notice thereof to the producer, in the case of rice, and to the operator of the farm, in the case of any other commodity. If, after considering the eligibility for an acreage allotment of a farm or a producer, it has been determined that no quota is to be established for such farm or such producer, the notice shall contain the word 'none' as the amount of the quota. * * * The notice shall contain the information required by Sections 711.3 and 711.4 for publication. The notice shall contain also, on the face or back thereof, a brief reference to, or statement of, the procedure whereby application for review of the quota may be made.

"Section 711.3—List or Other Compilation of Acreage Allotments. The list or other compilation shall contain the following information relating to acreage allotments:

"(a) The acreage allotment for each farm or, in the case of rice, for each producer; or, if after considering the eligibility for an allotment of a farm or a producer it has been determined that no acreage allotment is to be established for such farm or such producer the word 'none' shall be inserted as the amount of the acreage allotment. * * *

"Section 711.1—Definitions. * * *

"(g) The term 'quota' means a marketing quota established under Title III of the act, and, for purposes of review, shall be deemed to include the acreage allotment, normal yield or actual yield established or determined in connection therewith."

Amount of Penalty Due" (hereinafter called "Penalty Notice"). The contents of this notice, in condensed and tabulated version are set out as follows:

| | |
|---|---|
| Farm Cotton Acreage Allotment | .0 acres |
| Acreage of Cotton on the Farm | 9.0 acres |
| Excess Acreage of Cotton | 9.0 acres |
| Normal Yield per Acre | · 173 pounds |
| Normal Production of Acreage Allotment | .0 pounds |
| Farm Marketing Excess of Cotton | 1557 pounds |
| Amount of Penalty | $241.33 |
| Final date for Payment of Penalty | March 5, 1951 |

The first four entries in above tabulation are recorded, one each in horizontal sequence, under columns A, B, C and D, respectively, of the aforesaid notice. The final part of the notice form reads as follows:

"Review by Review Committee

"Any application for review of the entry in Column B, D, or F, is required to be filed with the secretary of the County Committee, within 15 days after the mailing of this notice, in accordance with the regulations prescribed by the Secretary of Agriculture. These regulations are available at the Production and Marketing Administration County Office."

The most prominent circumstance in this case is that no proper notice was given to the defendant of the committee's decision to deny him any actual acreage allotment, despite his legal right to such notification whether the committee acted positively and fixed a certain acreage, or acted negatively and denied any allotment. The regulation identified as Section 711.1 already quoted in a footnote, recites that the term "quota" has an expansive meaning, which, inter alia, includes "acreage allotment" for purposes of review, and, accordingly, if a timely notice of the committee's action had been served on the defendant he might have taken the question, while it was still live, before a local review committee under the terms of the Agricultural Adjustment Act.[4] Indeed, the ordinary time of 15 days for prosecuting such a review under the statute was contingently enlarged, effective only for the year 1950, and the defendant by said special act would have been entitled to have a review of his acreage allotment standing at any time before March 31, 1950.[5]

Instead, nothing was done by official action to inform the defendant directly of what had befallen him, until the issuance and service of the aforesaid "penalty notice", dated March 13, 1951, and even then it came about incidentally in what was primarily a notice of the assessment and demand for payment of a penalty. In other words, Column A merely reflected as bearing on the penalty that the defendant got a nil acreage allotment at some unstated time. The plaintiff contends that the defendant is deprived of any defense since he failed to exhaust administrative recourse against said allotment. This presupposes that the "penalty notice" has also the guise of a belated notice of the negative acreage allotment. That very notice pointed out that he had a right to file an application for review of the entries in Columns B, D, or F, thereof, but said nothing about a review of the entry in Column A, which contained the only mention of an acreage allotment, this being the key entry from the defendant's standpoint, and it would be easy for a layman to construe silence on the subject as signifying no right, at that late

4. Title 7, Section 1363, U.S.C.A.

5. Act of March 31, 1950, Chapter 81, Public Law 471, 64 Stat. 41, 81st Congress, Second Session, 7 U.S.C.A. § 1363 note.

time, to review the said allotment, (which normally, no doubt, would be true at the juncture of a "penalty notice"), or, at least, the silence would likely tend to nip any thought of seeking a review. In any event, a review would have been moot in 1951. Obviously, to conduct a review of an acreage allotment for the past year, in connection with a crop which has already become finished business, would seem an idle proceeding.

The salient features in this suit are unusual and will be recounted. At the outset, the secretary of the County Committee sent the defendant the "Basic Acreage Notice", indicating that he would have a given acreage allotment and that was not contradicted officially until a year and a half later, when he was served with the "penalty notice". No written notice of the decision denying defendant any specified acreage allotment was served on him within the time intended by the law, nor ever, unless the "penalty notice" also constituted a notice of the some time prior nil acreage allotment. Here was a plain default in the administrative handling, even if the "penalty notice" was also a belated notice of the said acreage allotment. The "penalty notice" threw in confusion from the standpoint of the scope of what right of review the defendant had left at that late date. In the face of this muddle, manifesting faulty administration of the law, the plaintiff is in a weak position to maintain the drastic viewpoint that defendant cannot be heard to question his liability in this suit because he failed to exhaust all administrative remedies for relief.[6] For one thing, it is uncertain that the defendant failed to pursue any adequate administrative remedy, in the sense that would put him in default. Be that as it may, the rule that administrative relief must be exhausted before resorting to the courts did not originate in the constitution, or any statute, but came into being simply as a point of judicial policy adopted by the courts,[7] and the courts do not recognize that it must always be applied in hidebound fashion. The rule will be passed by, if there is good reason for making an exception, and that has been done by both the federal and state courts.[8] The circumstances here justify such exception, if there is any need for justification, mainly because the defendant was confronted with a puzzling picture of administrative action capped by a "penalty notice", issued without any prior hearing, and apparently contradicting the earlier "Basic Acreage Notice", making the penalty assessment invalid, and the defendant should not be shorn of his defense by closing the door against him automatically in the name of said rule, and, secondly, the only indulgence he desires is to act defensively, and that may well be a good contributing reason for waiving said rule.[9]

The Court directs a judgment herein for the defendant.

---

6. Idaho Falls Bonded Produce & Supply Co. v. United States, 123 Ct.Cl. 842, 107 F.Supp. 952.

7. Smith v. United States, 1 Cir., 199 F.2d 377; United States v. Wood, 1 Cir., 200 F.2d 884.

8. Levers v. Anderson, 326 U.S. 219, 66 S. Ct. 72, 90 L.Ed. 26; Burns v. Clarksdale Production Credit Ass'n, 192 Miss. 141, 5 So.2d 10.

9. Smith v. United State and United States v. Wood, supra.